# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREW POPE,** | : | Civil No. 3:15-CV-480 |
| | : | |
| **Plaintiff** | : | **(Judge Mariani)** |
| | : | |
| v. | : | **(Magistrate Judge Carlson)** |
| | : | |
| **OFFICER FERANCE,** | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

**I.   INTRODUCTION**

In this action, the plaintiff, Andrew Pope, alleges that Wilkes-Barre Police Officer Jeremy Ferance used excessive force against him in violation of the Fourth Amendment of the United States Constitution during the course of Pope's arrest on November 11, 2013, for drug trafficking and other crimes.  Pope does not dispute that he was subsequently convicted of heroin trafficking and resisting arrest in violation of Pennsylvania law; he simply avers that Officer Ferance violated his constitutional rights by using his taser when it was unnecessary to do so. According to Pope's allegations, he did not attempt to flee or otherwise present any threat to the officer, and offered no resistance when Officer Ferance approached

him. Nevertheless, he claims that Officer Ferance used his taser twice, striking him in the abdomen, and that he uttered racial epithets while doing so.

Officer Ferance and a fellow officer, John Majikes, respond with a version of the encounter that is corroborated by Pope's own admissions in guilty pleas that he entered, including a plea of guilty to the charge of resisting arrest. According to these officers' affidavits, and Pope's guilty plea admissions, after they stopped the vehicle in which Pope was driving, and which had been observed as the site of a narcotics transaction moments earlier, Pope attempted to flee the vehicle in which he was seated, disregarded direct orders, and presented a threat by reaching for his waistband, thereby justifying the use of some degree of force. The officers also note that Pope did not sustain any serious injury, and received only minor scrapes during the course of the arrest. Both officers flatly deny using racial epithets during this incident. Believing that this version of the events that transpired on November 11, 2013, is uncontroverted and compelling, Officer Ferance has moved for summary judgment on Pope's claim against him.

In his brief response, Pope purports to dispute Officer Ferance's version of what transpired during the arrest, suggesting that he would be prepared to testify that he was not fleeing or presenting any threat to the officers. Stripped to its essentials, Pope's current position is little more than a denial of his guilty plea admissions to resisting arrest during this very encounter. Furthermore, Pope has

offered nothing in the form of actual evidence to contradict the officers' version of the facts, or the uncontroverted fact that he pled guilty and was sentenced for resisting arrest – something that under Pennsylvania law, by definition, authorized the arresting officers to use "substantial force".[1]

In his brief opposing summary judgment, Pope also claims that he would hope to call two witnesses to testify at trial, who he expects will corroborate his version of the facts. However, Pope has not offered an affidavit from either of these individuals, one of whom was apparently also convicted for his role in the drug trafficking that led to the men's arrests. At this point, Pope's only version of the events of this case can be found in his complaint, where he alleges in brief that he was "driving around with two friends . . . when the cop came . . . [and] never

---

[1] Pope pled guilty to resisting arrest under 18 Pa. Cons. Stat. Ann. § 5104. (Doc. 39-1, Ex. D, Guilty Plea dated December 2, 2014.) That statute provides that "[a] person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." *Id.* As discussed below, the Court understands that a conviction for resisting arrest does not in all cases preclude a plaintiff from asserting that the arresting officers used excessive force. *See Nelson v. Jashurek*, 109 F.3d 142 (3d Cir. 1997). However, in this case, Pope's admission to this offense, and the focus of his claim on the officer's use of a taser, is relevant to a determination that the officer enjoys qualified immunity from Pope's claim for money damages relating to the use of a taser in the course of effecting a lawful arrest against a suspect who resisted the officer's attempts to take him into custody.

3

said a thing to me . . . he just taze me with the taze gun, then pull me out of the car letting [sic] me fell [sic] on my face . . . ." (Doc. 7, Compl.) That abbreviated set of allegations, which is so plainly at odds with Pope's admission at the time of his guilty plea that he was doing something quite different than simply "driving around with two friends," is alone insufficient to create a triable issue of fact.

Upon consideration, we find that the record does not contain sufficient evidence in support of Pope's general assertion that he was subjected to the use of a taser during the course of an arrest that he later admitted to resisting. More fundamentally, even if the complaint contained additional allegations that could conceivably support an excessive force claim under these undisputed facts; and even if Pope had adduced some evidence beyond the mere hope that witnesses might corroborate what he generally alleged in the complaint, we find that based upon the facts alleged and the undisputed facts surrounding Pope's arrest, that Officer Ferance is entitled to qualified immunity because no reasonable officer in his position would have believed that the use of a taser in the manner described by Pope to would have violated *clearly established* law. Accordingly, it will be recommended that the motion for summary judgment be granted and the case closed.

4

## II.  BACKGROUND

Many of the facts of this case are undisputed.  The plaintiff acknowledges that on November 11, 2013, he was in a vehicle with two other individuals, Robert Scorey and Justin Sobeski in the City of Wilkes-Barre.  On that day, Officers Ferance and Majikes were participating in a drug investigation that involved the use of a confidential informant to purchase heroin from a suspected drug trafficker.  The officers have attested, and there appears to be no real dispute, that during the course of this investigation a confidential informant called Andrew Pope and negotiated a purchase of an agreed-upon amount of heroin.  Indeed, Pope pleaded guilty to heroin distribution and has admitted to this conduct.  Pope thereafter instructed the confidential informant to meet him on Nicholson Street in Wilkes-Barre at a set location.  The officers observed the confidential informant enter Pope's vehicle at that location, and later emerge with a quantity of what later tested positive as heroin.  Officers Ferance and Majikes subsequently conducted a traffic stop of the vehicle in which Pope was a passenger.

In his complaint, Pope alleged that he was just "driving around with two friends" when officers stopped the vehicle and, without saying anything, used a taser against him before pulling him from the vehicle and letting him fall to the ground and using racially hostile language during the course of arresting him. (Doc. 7.)  According to Pope's version of the facts, as set forth in the complaint, he

5

was simply picked up arbitrarily and subjected to racial profiling and excessive force. Pope has asserted that if permitted, he hopes to call the other passengers in the vehicle who he believes would testify consistently with his version of the incident, and in support of his claims. Pope has not, however, submitted any actual evidence that support his claims. This absence of evidence is contrasted against undisputed evidence showing that Pope pled guilty not only to heroin trafficking, but to resisting the officers' efforts to arrest him.

The officers have given sworn affidavits claiming that they gave clear instructions to the vehicle's occupants, which Pope disregarded, instead attempting to flee from police, and reaching for his waistband, which the officers perceived as a potential threat to their safety. The officers also provide documentary proof that following his arrest, Pope pled guilty to possession with the intent to deliver heroin, as well as resisting arrest. He was sentenced to between 15 and 30 months in state prison, and six months of probation on the resisting arrest charge. The officers deny directing racially insensitive language toward Pope or anyone else on that day.

## III. **DISCUSSION**

### A. **Legal Standard**

Officer Ferance has moved for judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." *Univac Dental Co. v. Dentsply Int'l, Inc.*, 702 F. Supp. 2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324

7

(1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." *Thimons v. PNC Bank, NA*, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." *Fireman's Ins. Co. Of Newark NJ v. DuFresne*, 676 F.2d 965, 968 (3d Cir. 1982*), see Sunshine Books, Ltd. v. Temple University*, 697 F.2d 90, 96 (3d Cir. 1982)." [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." *Lockhart v. Hoenstine*, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." *Gans v.*

*Mundy*, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).  Rather, summary judgment is entirely appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence.  *Anderson*, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  *Id.* at 252; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007).

      **B.**    **Officer Ferance is Entitled to Qualified Immunity**

A plaintiff may prevail on an excessive force claim if he can establish that a seizure occurred and that the seizure was "unreasonable under the circumstances." *Lamont v. New Jersey*, 637 F.3d 177, 183 (3d Cir. 2011).  A "seizure" occurs for purposes of the Fourth Amendment to the United States Constitution when a suspect "submits to the police's show of authority or the police subject him to some degree of physical force." *Abraham v. Raso*, 183 F.3d 279, 291 (3d Cir. 1999).  The Supreme Court has instructed that "[d]etermining whether the force used to effect a particular seizure is 'reasonable' . . . requires . . . careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). This inquiry is an objective one. *Id.* at 397. Additionally, "[r]easonableness is to be evaluated from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004) (internal quotation marks and citation omitted).

To the extent that Officer Ferance is suggesting that Pope's guilty plea to the charge of either heroin trafficking or even resisting arrest as a matter of law precludes his excessive force claim as a matter of law, we disagree. In a similar case brought by a plaintiff who had been convicted of resisting arrest, the Third Circuit Court of Appeals reversed a grant of summary judgment in favor of the arresting officers, finding that even if the officers were justified in using "substantial force" in accordance with Pennsylvania law, that statute did not also authorize the officers to use "excessive force" in the course of making an arrest. *Nelson v. Jashurek*, 109 F.3d 142, 145-46 (3d Cir. 1997). In so finding, the Court also reasoned that simply being convicted of resisting arrest did not bar a claim for excessive force under the rule announced in *Heck v. Humphrey*, 512 U.S. 477 (1994), in which the Supreme Court held that an action under 42 U.S.C. § 1983 could not be maintained on the basis of the events that led to a conviction that had not been reversed "if a judgment in favor of the plaintiff in the civil case would

imply that the conviction was invalid." *Nelson*, 109 F.3d at 144 (citing *Heck*, 512 U.S. at 485-87). The Third Circuit noted that a finding that an arresting officer used "excessive 'substantial force' would not imply that the arrest was unlawful," *id.* at 145, and hence there was no *Heck* bar to a claim of excessive force, *id.*. Although the Third Circuit remanded the case for further proceedings, the Court emphasized that if the matter went to trial, a jury would need to be instructed that under Pennsylvania law the arresting officer was by law justified in using "substantial force" during the arrest, since the plaintiff had been convicted of resisting arrest – which by its definition entitled the officer to use "substantial force." *Id.* at 146. Nevertheless, the fact of the conviction alone did not preclude a claim for excessive force in violation of the Fourth Amendment. *Id.* The same rule applies here, and would preclude summary judgment from being entered pursuant to the rule announced in *Heck*.[2]

---

[2] We note also that the Third Circuit expressly declined to consider whether the officer in *Nelson* was entitled to summary judgment on the basis of qualified immunity, finding that it would be inappropriate to resolve the claim in that manner where "genuine disputes of material facts may exist with respect to it." *Id.* at 147. The Court of Appeals noted that the officer in that case was "free to renew his motion for summary judgment on the basis of qualified immunity in the proceedings on the remand in the district court." *Id.* Thus, *Nelson* permits precisely the course we follow here, a finding of qualified immunity in a setting where an undisputed measured degree of force was used to subdue a person who pleaded guilty to resisting arrest.

11

With that having been said, however, review of the record in this case reveals a claim for excessive force that is almost entirely devoid of detail, and omits an especially relevant set of details acknowledged by Pope in his guilty plea – namely, the fact that not only was Pope arrested on the day in question, but later pled guilty to drug trafficking and resisting arrest. Pope does not acknowledge having been convicted of either of these crimes in his complaint; instead, he alleges – quite generally – that he was simply driving around with friends when they were essentially profiled, assaulted and demeaned by the officers. Pope seems to focus his excessive force claim on the officer's decision to use a taser against him. Pope's later admission that he resisted Officer Ferance's attempts to take him into custody suggests a very different picture of what transpired. (Doc. 31-1, Ex. D.) The Court is not weighing the evidence, but is simply noting that Pope's own admissions in other judicial proceedings are entirely at odds with his general recitation regarding the day of his arrest.

But even if Pope's spare allegations which are unsupported by any competent evidence on the record that he has developed could provide an arguably triable issue with respect to the amount of force used during the course of his arrest, we nevertheless are constrained to recommend that the Court granted Officer Ferance qualified immunity on the claim of excessive force because it is clear from the record that no reasonable officer in Officer Ferance's position would

have believed he was violating a clearly established constitutional right by using a taser against a drug trafficker who admitted to resisting arrest. Qualified immunity protects officials from suits for money damages, such as Pope's claims here. The immunity is intended to "shield government officials performing discretionary functions, including police officers, 'from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "An officer is entitled to qualified immunity if he meets at least one of a two prong inquiry." *Patrick v. Moorman*, 536 F. App'x 255, 259 (3d Cir. 2013).

With respect to the first of these prongs, a court must determine whether the official violated a statutory or constitutional right. Secondly, the court must determine whether that right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011); *Kopec*, 361 F.3d at 776 (citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). The court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis" to address first "in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A right is "clearly established" when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 131 S. Ct. at 2083 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (alterations in original). "If no case speaks directly to the legality of the officer's conduct, the challenged conduct [needs] to be such that reasonable officers in the defendant['s] position at the relevant time could have believed, in light of what was in the decided case law, that their conduct was lawful." *Geist v. Ammary*, 40 F. Supp. 3d 467, 485 (E.D. Pa. 2014) (citing *Giuffre v. Bissell*, 31 F.3d 1241, 1255 (3d Cir. 1994) (internal quotations omitted).

In this case, it is submitted that qualified immunity is compelled on the record here, where the right to be free from the use of a taser during the course of an arrest that the plaintiff admitted to resisting, was not a "clearly established" constitutional right. Review of just a handful of cases in this field make it clear that such a right was not "clearly established," in this specific factual context where police deployed a taser twice to curtail flight by an admitted drug trafficker who has pleaded guilty to resisting arrest, and thus Officer Ferance "could have believed, in light of what was in the decided case law, that [his] conduct was lawful." *Giuffre*, 31 F.3d at 1255. Stated somewhat differently, even if a jury were to conclude that Pope's constitutional rights were violated by being subjected

14

to a taser during his arrest, the Court could not find that a reasonable officer in Officer Ferance's position would have known "beyond debate" that using his taser on Pope, who was resisting arrest, constituted excessive force. *See Brown v. Cwyner*, 484 F. App'x 676, 681 (3d Cir. 2012); *see also Estep v. Mackey*, 2016 WL 1273249, at *5 (E.D. Pa. Mar. 31, 2016) (because the law in the field of police use of tasers was not "clearly established," concluding that it could not find it "beyond debate" that an officer's use of his taser against a suspect who was in flight and who had disobeyed police orders, even if not under arrest, constituted excessive force, and, therefore, granting officer qualified immunity).

As the court in *Estep* noted, there have been cases where courts within the Third Circuit have found that an officer's use of his or her taser was prohibited under clearly established case law, and thus they have found that qualified immunity was unavailable to the officer in those situations. *Id.* However, in such cases, the plaintiff's physical condition or surroundings are such that it would have been apparent to a reasonable officer that the use of a taser could cause serious injury or even death. *See, e.g., Martin v. City of Reading*, 118 F. Supp. 3d 751, 765-66 (E.D. Pa. 2015) (collecting excessive force claims arising out of the use of a taser, and finding in that particular case that the use of a taser against the plaintiff who was standing on an elevated portion of a highway, forty feet above a concrete surface); *Brown v. Burghart*, Civ. A. No. 10-3374, 2012 WL 1900603, at *10-11

15

(E.D. Pa. May 25, 2012) (finding trooper not entitled to qualified immunity when he used his taser in August 2008 on a plaintiff who was located near flammable material, thereby creating a substantial risk of physical harm to the plaintiff that a reasonable officer would have known violated federal law). Where there is an absence of evidence to suggest that the arrestee or suspect was subjected to a risk of serious injury or death, however, courts have found that qualified immunity may be available to officers who use tasers in appropriate circumstances such as those involving suspects who are resisting arrest. *Estep*, 2016 WL 1273249, at *5-6.

Thus, lower court decisions such as *Martin* and *Brown* must be read in context and contrasted against numerous other decisions where courts have concluded that police use of a taser to "overcome a suspect's resistance may be reasonable." *Estep*, 2016 WL 1273249, at *6. Included among these cases is *Brown v. Cwynar*, 484 F. App'x 676, 681 (3d Cir. 2012), where the court of appeals observed that at the time of the events in that case, "multiple courts of appeals had approved the use of taser guns to subdue individuals who resist arrest or refuse to comply with police orders" and that "no decision by the Supreme Court, this Circuit, or a majority of other federal circuits had foreclosed the use of taser guns when suspects resist arrest in an aggressive and combative manner." Other courts from within the Third Circuit are in accord. *See Patrick v. Moorman*, 536 F. App'x 255, 259 (3d Cir. 2013) (finding reasonable as a matter of law an

officer's use of his taser to subdue a bank robber who was fleeing and attempting to resist arrest); *Gruver v. Borough of Carlisle*, No. 4:CV 05-1206, 2006 WL 1410816, at *4-5 (police use of a taser on a suspect who was believed to be intoxicated and behaving in an unruly manner was reasonable).

Moreover, as the Third Circuit noted in *Brown*, in recent years, and around the time of the events in this case, "multiple courts of appeals had approved of the use of taser guns to subdue individuals who resist arrest or refuse to comply with police orders." *Brown*, 484 F. App'x at 681. Among the cases *Brown* cited are *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (holding the use of a taser to "effectuate [an] arrest was reasonable when the individual was "hostile, belligerent, and uncooperative"); *Hinton v. City of Elwood*, 997 F.2d 774, 781 (10th Cir. 1993) (approving use of a stun gun to overcome a suspect's resistance to arrest); *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir. 1992) (holding that it was reasonable for officer to use a taser to subdue a paranoid schizophrenic who had locked himself in his apartment and was refusing to obey police orders to open the door and relinquish his weapons); *cf. Giles v. Kearney*, 571 F.3d 318, 329 (3d Cir. 2009) (holding that officer's use of a capstun was "proportionate" where prison inmate "repeatedly refus[ed] to obey orders").

Importantly, as the panel in *Brown* observed, "no decision by the Supreme Court, this Circuit, or by a majority of other federal circuits had foreclosed the use

17

of taser guns when suspects resist arrest in an aggressive and combative manner." *Id.* (citing *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012) (where that court of appeals held that qualified immunity precluded claims against an officer who had used his taser against a man who resisted arrest by crawling and thrashing because "no precedent . . . ha[d] staked out a bright line.").

The same result should apply here, where the plaintiff in this case pled guilty to resisting arrest when Officer Ferance endeavored to take him into custody following a traffic stop that was initiated after Pope had engaged in heroin trafficking. Pope's admission to resisting arrest, and the total absence of allegations or facts that could suggest that Officer Ferance used his taser in some context other than in effecting the arrest that Pope was resisting, makes qualified immunity appropriate here. To paraphrase the Third Circuit's conclusion in Brown, "[a] reasonable officer in [Officer Ferance's] shoes at the time in question would not have perceived federal law to preclude deploying a taser to effectuate [Pope's] arrest." *Brown*, 484 F. App'x at 681.

## IV. RECOMMENDATION

Based upon the spare allegations in the complaint, and undisputed facts of this case, and particularly the fact that the plaintiff pled guilty to resisting arrest, we find that Officer Ferance is entitled to qualified immunity from the plaintiff's claims that this officer subjected him to unconstitutionally excessive force by using

his taser gun to gain Pope's compliance. No reasonable officer in Officer Ferance's shoes at that time would have understood or believed it to be "beyond debate" that tasering Pope would amount to excessive force, where Pope admitted to resisting arrest. *Id.* Accordingly, it is recommended that Officer Ferance's motion for summary judgment be GRANTED.

> The parties are further placed on notice that pursuant to Local Rule 72.3:
>
> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                          */s/ Martin C. Carlson*
                                          Martin C. Carlson
                                          United States Magistrate Judge

Dated: June 9, 2016